UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
CARL AND TONI SADOWSKY,

                Plaintiffs,

vs.

BANK OF AMERICA CORPORATION,

                Defendant.
-----------------------------------------------------------------x

**'07 CIV 3800**

**COMPLAINT**

Plaintiffs, for their complaint against the defendant, allege as follows:

## NATURE OF THE CASE

1. Plaintiffs are shareholders of ABN AMRO Holding ("ABN Amro" or the "Company"). This action is related to the action styled Bank of America Corporation v. ABN AMRO Bank N.V. and ABN AMRO Holding N.V., 07-cv-3578, filed in this Court on May 4, 2007, in which Bank of America Corporation ("Bank of America") alleges that ABN Amro has breached a Purchase and Sale Agreement ("PSA") to sell LaSalle Bank Corporation ("LaSalle"), a subsidiary of ABN Amro, to Bank of America. The PSA was part of a two-part transaction in which ABN Amro agreed that the rest of the Company would be acquired by Barclays PLC. As Bank of America knew, ABN Amro had structured the transactions in such a way that the agreement to sell LaSalle to Bank of America would operate as a "poison pill" to thwart a competing and higher bid for all of ABN Amro by a consortium of European banks, who conditioned their bid on LaSalle being included in the transaction and stated that they intended to divide up the Company amongst themselves.

2. The two related transactions – the sale of LaSalle to Bank of America and the sale of the remainder of ABN Amro to Barclays – were announced by ABN Amro on April 27, 2007.

3. On May 3, 2007, the sale of LaSalle to Bank of America was enjoined by a Dutch court, which held that, notwithstanding a provision in the PSA which may be read as being to the contrary, the transaction required shareholder approval as a result of its size and the importance of LaSalle to ABN Amro. Indeed, both ABN Amro and Bank of America at all times knew or should have known that the transaction was entered into by ABN Amro in conjunction with the transaction with Barclays and required shareholder approval. Nevertheless, Bank of America has brought suit in this Court against ABN Amro to enforce the contract or require ABN Amro to pay a $200 million termination fee and billions of dollars of other damages in the event ABN Amro shareholders fail to approve the transaction and it is not consummated.

4. Bank of America's lawsuit is without merit and itself is in breach of the PSA, which expressly provides that a condition precedent to the consummation of the transaction is the lack of any injunction. Bank of America's actions to force the consummation of the deal while an injunction is pending violates the express terms of the contract.

5. Plaintiffs and the other shareholders of ABN Amro are third party beneficiaries of the PSA. ABN Amro has represented that the sale of LaSalle will result in approximately 12 billion euros being distributed to ABN Amro shareholders.

6. Since the LaSalle transaction is not proper under Dutch law and has been enjoined, and since Bank of America knew that the transaction was designed by ABN Amro as a "poison pill" as part of a two-part transaction in which ABN Amro will be merged in its entirety with Barclays Bank, mandating a shareholder vote, enforcement of the contract is contingent

upon its approval by ABN Amro shareholders and, if not approved, the contract should be rescinded and Bank of America should be enjoined from seeking to enforce its terms or to extract any "damages." Moreover, Bank of America should be held liable for all damages caused as a result of its in terrorem lawsuit.

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(2).

8.  The amount in controversy in this lawsuit, exclusive of interest and costs, exceeds $75,000.

9.  This Court has personal jurisdiction over the defendant because it does substantial business in this judicial district. Moreover, Bank of America submitted to personal jurisdiction. The PSA between ABN Amro and Bank of America for the purchase of LaSalle unequivocally provides that Bank of America "irrevocably submit[s] to the exclusive jurisdiction of the Federal Courts of the United States of America located in the State of New York (the 'Federal Courts'), or, if jurisdiction in the Federal Courts is not available, the courts of the State of New York (the 'New York Courts'), in respect of any 'Covered Claim[.]'" The PSA further provides that Bank of America has "waive[d], and agree[d], not to assert, as a defense in any action, suit or proceeding raising a Covered Claim that any of the parties hereto is not subject to the personal jurisdiction of the New York Courts or the Federal Courts or that such action, suit or proceeding may not be brought or is not maintainable in said Courts or that the venue thereof may be inappropriate or inconvenient or that [the contract] or any such document may not be enforced in or by such Courts." The PSA defines "Covered Claim" to mean "any claim, dispute or

controversy relating to or arising out of the negotiation, interpretation or enforcement of [the contract] or any of the documents referred to in [the contract] or the transactions contemplated hereby or thereby."

## PARTIES

10. Plaintiffs are shareholders of ABN Amro, a public company incorporated under the laws of the Netherlands. Plaintiffs are third party beneficiaries of the PSA purporting to sell LaSalle to Bank of America and to pass the consideration the consideration on to ABN Amro shareholders. As shareholders of ABN Amro, plaintiffs' right to vote on the important decision whether to sell LaSalle to Bank of America is threatened by Bank of America's suit against ABN Amro seeking to specifically enforce the PSA without a shareholder vote.

11. Defendant Bank of America is a corporation duly organized and existing under the laws of the State of Delaware, with headquarters in Charlotte, North Carolina. Bank of America is a financial holding company that, through its subsidiaries, provides a range of banking and non-banking financial services, including consumer and commercial banking services in the United States.

12. Non-party ABN Amro is a public company incorporated under the laws of the Netherlands. ABN Amro owns all of the shares of ABN Bank, a leading international bank headquartered in Amsterdam. Through its subsidiary ABN AMRO North America Holding Company, ABN Bank owns LaSalle, which is one of the leading banks in Chicago and other Midwest markets.

## SUBSTANTIVE ALLEGATIONS

13. On March 19, 2007, ABN Amro issued a joint press release with Barclays saying that they were engaged in exclusive preliminary talks with regard to a potential merger of the two companies.

14. On April 12, 2007, a consortium of European banks, consisting of Royal Bank of Scotland Group plc ("RBS"), Fortis NV ("Fortis") and Banco Santander Central Hispano, S.A. ("Santander") (collectively, the "Consortium"), sent a joint letter to the Chairmen of the Supervisory and Managing Boards of ABN Amro, expressing interest in acquiring the Company.

15. On April 17, 2007, ABN Amro and Barclays jointly announced that they agreed to extend the exclusivity period for their acquisition negotiations through April 20, 2007. Also on April 17, 2007, ABN Amro confirmed that it received a letter from the Consortium requesting that talks be initiated for their acquisition of the Company.

16. On April 23, 2007, ABN Amro and Barclays jointly announced their agreement to merge. The merger would be implemented through an exchange offer pursuant to which ABN Amro shareholders would receive 3.225 shares in Barclays for each existing ABN Amro share. Existing ABN Amro shareholders would own approximately 48% of the combined group. The total value of the merger to ABN Amro shareholders would be about $88 billion. ABN Amro's current Chairman, Arthur Martinez, would be Chairman of the combined group's board of directors, which would include nine members from ABN Amro. Both ABN Amro and Barclays agreed to recommend the merger to their shareholders, whose approval for the deal would be required.

17. ABN Amro further announced on April 23, 2007 that it had agreed to sell its LaSalle Bank Corporation subsidiary to Bank of America for $21 billion. According to the announcement, the completion of the sale of LaSalle is a condition of the offer by Barclays. ABN Amro represented in its announcement that the excess capital released by the sale of LaSalle would be distributed to the shareholders of the combined Barclays/ABN Amro. The agreement with Bank of America allows ABN Amro to execute a similar agreement for a higher offer for LaSalle for a period of 14 days, and gives Bank of America five days to match any higher offer and provides for a termination fee of $200 million payable to Bank of America in the event the agreement is terminated.

18. The merger of ABN Amro with Barclays and the sale of LaSalle to Bank of America are deceptively represented to be separate transactions. At the time the sale of LaSalle to Bank of America was negotiated, Bank of America was aware that ABN Amro was involved in merger negotiations with Barclays, that the sale of LaSalle by ABN Amro was an integral part of those negotiations, and that ABN Amro's management favored dealing with Barclays over the Consortium so that the Company's other operations would not be split up and they could remain in their lucrative and prestigious positions. Moreover, closing of the LaSalle transaction is a condition of the Barclays offer. Indeed, the rapidity with which the LaSalle deal was reached – a mere four days – clearly demonstrated to Bank of America that the transaction was being reached in coordination with the Barclays deal and was desinged as a "poison pill" to thwart other bidders, particularly the Consortium.

19. On April 25, 2007, the Consortium issued a press release stating that on the very day they were to meet with ABN Amro to discuss their proposals for a potential transaction with

ABN Amro, ABN Amro announced a recommended offer by Barclays and the sale of LaSalle to Bank of America. The Consortium demonstrated in the press release that their proposals provided a far greater immediate monetary benefit to ABN Amro shareholders. The only pre-conditions to the proposals were that LaSalle remain within the ABN Amro group and the Consortium be provided with the same due diligence materials provided by ABN Amro to Barclays.

20. On April 26, 2007, a Dutch shareholder group, Vereniging van Effectenbezitters ("VEB"), filed an Application for an Inquiry and an Application for Immediate Relief in the Enterprise Chamber of the Amsterdam Court of Appeals, the Netherlands court with jurisdiction over entities organized under Dutch law. VEB requested the Court to order the holding of an inquiry into the strategy and the course of events at ABN Amro in connection with the "lightning sale" of LaSalle to Bank of America. VEB claimed that the legal requirement for ordering an inquiry is the presence of well-grounded reasons for suspecting the principles of sound corporate governance were not followed and that its petition meets that test. VEB's objections to the sale of LaSalle were:

* The LaSalle transaction is unlawful because ABN Amro is deliberately using the deal to frustrate the receipt of a better bid from the Consortium or impede the Consortium from making such a bid, thereby depriving its shareholders of the option of considering a competitive and higher bid;

* The LaSalle transaction is an important decision as referred to under Article 107a, section 1, Book 2 of the Netherlands Civil Code and as such ABN Amro is under an obligation to allow the shareholders to vote upon it; and

* the "precipitate sale" of LaSalle equates to an improper anti-takeover defense.

21. VEB asserted that the LaSalle transaction qualifies as an important decision requiring a shareholder vote under the Dutch Corporate Governance Code because:

* The LaSalle transaction, in the value of $21 billion, is equal to 66% of ABN Amro's shareholder's equity as of the end of 2006;

* In terms of the value of its operating units, LaSalle is the second in size for ABN Amro;

* LaSalle is an integral part of ABN Amro's strategy; and

* The LaSalle transaction is directly linked to the Barclays deal, which would sell the entire Company.

22. In its petition, VEB requested that the Enterprise Chamber grant immediate relief and forbid ABN Amro from either implementing, or lending assistance to, the agreement with Bank of America.

23. ABN Amro, in response to VEB's petition, claimed, among other things, that, since LaSalle did not account for more than one-third of ABN Amro's assets, the LaSalle transaction failed to meet the test prescribed by the Dutch Corporate Governance Code to require shareholder approval. VEB asserted in reply that ABN Amro's reading of the statute is not defensible since it would grant to ABN Amro virtually unlimited opportunities to carry out transactions without the approval of shareholders, which is not a proper reading of the law. Indeed, VEB claimed that if ABN Amro's argument was accepted then, with 987 billion euros in assets on its last balance sheet, it could do transactions up to 329 billion euros without any need for shareholder approval. In other words, ABN Amro could take over Shell (market

capitalization of 160 billion euros), Unilever (66 billion euros), ArcelorMittal (55 billion euros), and Philips (36 billion euros) without any requirement to seek shareholder approval. According to VEB, ABN Amro is seeking to take advantage of the fact that an exhaustive description of the important decisions requiring shareholder approval is not provided in the Dutch Corporate Governance Code.

24.     The Enterprise Chamber held a hearing on April 28, 2007. On May 3, 2007, the Enterprise Court ruled that it "forbids ABN Amro ... by means of an immediate injunction ... from proceeding with the purchase and sale of [LaSalle] ... without previous approval given by a general meeting of shareholders." The ruling further stated, "The Chamber doesn't see on what grounds the general shareholders of ABN Amro should be deprived of the right to come to their own decision with regards to the sale of ABN Amro."

25.     On May 4, 2007, Bank of America sued ABN Amro in the United States District Court for the Southern District of New York, seeking either specific enforcement of the contract or the $200 million break-up fee and billions of dollars of other purported damages. In the suit, Bank of America claims that the Enterprise Court's ruling enjoining the LaSalle transaction pending a shareholder vote caused a breach of contract by ABN Amro since the PSA stated that ABN Amro had the authority to enter into the transaction and that no shareholder vote would be required.

26.     There was no such breach of contract by ABN Amro. The PSA itself expressly states that a "condition precedent" to ABN Amro's "obligation to effect the closing" of the transaction is that "no order, injunction, decree or judgment issued by any Governmental Entity or other legal restraint or prohibition preventing the consummation of the transactions

contemplated by this Agreement shall be in effect." The contract defines "Governmental Entity" to mean "any court, administrative agency, arbitrator or commission or other governmental, prosecutorial or regulatory authority or instrumentality, or any SRO." Clearly, the Enterprise Court's injunction on the LaSalle transaction demonstrates beyond doubt that the required conditions precedent to the closing of the LaSalle transaction have not come about and it is, in fact, Bank of America that has breached the PSA by seeking to force the closing of the LaSalle transaction before all conditions precedent have been satisfied.

27. Bank of America's lawsuit against ABN Amro is without merit and has been launched for the in terrorem effect it will have on potential bidders and as a means to continue the improper defensive measures taken by ABN Amro. Bank of America was aware that the LaSalle transaction was an important decision that could, under the Dutch Corporate Governance Code, only be made by ABN Amro's shareholders and could not have relied, and did not rely, on any purported representation to the contrary.

28. On May 5, 2007, the Consortium made a $24.5 billion bid for LaSalle. A condition of the Consortium's LaSalle bid is ABN Amro's settlement of various lawsuits stemming from its agreement to sell LaSalle to Bank of America, including the lawsuit filed by Bank of America aiming to enforce the deal.

29. On May 7, 2007, ABN Amro rejected the Consortium's $24.5 billion offer for LaSalle. Among the reasons cited by ABN Amro for its rejection of the superior offer was the fact that "no evidence as to the existence of any financing commitments was provided." However, Ryan Palecek, an analyst at Dutch brokerage Kempen & Co. said ABN Amro's excuse centers on a point that two sides usually negotiate in good faith. "We view this as a sign that

ABN Amro might still be actively trying to obstruct the consortium," Palecek said in a note to clients.

30. On May 14, 2007, upon the order of the Authority for Financial Markets, the Dutch securities regulator, the Consortium published the confidential details of its offer for ABN Amro – confirming that it offered 7 billion euros more than Barclays for the Company. The Consortium noted that its offer was underwritten by Merrill Lynch and it had received alternative underwriting offers which they might choose to accept. Those alternative underwriting offers were from "major financial institutions," including some that currently act as financial advisors to ABN Amro. Indeed, the Consortium, in the draft Purchase Agreement it provided to ABN Amro on May 5, 2007, expressly stated that the offer is not subject to any financing condition. Similarly, the Purchase Agreement had no due diligence condition. Moreover, the proposal confirmed that the Consortium obtained all requisite corporate approvals required, is prepared to execute the Purchase Agreement as provided and conducted an antitrust and regulatory review that concluded there would be no such issues that would delay or impede consummation of the transaction, which was expected to close in the fourth quarter of 2007 if accepted. The Purchase Agreement provided by the Consortium recognizes the requirement that ABN Amro's shareholders approve its terms.

31. On May 15, 2007, Bank of America filed an appeal to the Dutch Supreme Court, arguing that United States law should govern the sale of LaSalle, that the sale does not require shareholder approval, and that even if shareholder approval is required, the decision of the Dutch Court wrongly penalizes Bank of America for a mistake on the part of ABN Amro's management in agreeing to sell something it was not empowered to sell.

32.   Plaintiffs, as third party beneficiaries of the PSA, bring this lawsuit to assure that the rights of ABN Amro and its shareholders are protected. Absent this lawsuit, ABN Amro may continue to collude with Bank of America and fail to properly respond to its complaint.

33.   Plaintiffs, as shareholders of ABN Amro, are entitled to vote on the important decision of whether to sell LaSalle to Bank of America. Bank of America, however, through its lawsuit seeks to enforce the PSA and deny plaintiffs their rights. ABN Amro has already sought to sell LaSalle to Bank of America without a shareholder vote and is not truly adverse to the relief sought by Bank of America in its lawsuit. Plaintiffs seek to enforce their rights here since Bank of America and ABN Amro have already attempted to suppress those rights and but for plaintiffs' actions and court actions will do so again.

## COUNT I
(Rescission, Injunctive Relief)

34.   Plaintiffs repeat and reallege the above allegations as if fully set forth herein.

35.   Defendant and ABN Amro entered into the PSA for the sale of LaSalle to Bank of America. The PSA sought to avoid Dutch laws requiring a shareholder vote for the sale of such a material part of a business.

36.   Since the PSA was entered into in violation of Dutch law, it should be rescinded if ABN Amro shareholders fail to vote in favor of the transaction.

37.   In the absence of rescission, Bank of America should be enjoined from its attempt to enforce the contract and collect its purported damages, including the $200 million termination fee. Bank of America knew that its contract to purchase LaSalle was a defensive mechanism designed to foreclose the receipt by ABN Amro and its shareholders of bids that would compete

with the one made by Barclays. Bank of America's actions to enforce the contract, including the $200 million termination fee provided therein, are improper under the unclean hands doctrine and other such equitable doctrines.

### COUNT II
### (Breach of Contract, Damages)

38.   Plaintiffs repeat and reallege the above allegations as if fully set forth herein.

39.   Bank of America has commenced an action for damages and specific performance against ABN Amro in violation of the very PSA it seeks to enforce. In fact, ¶ 7.1 of the PSA expressly provides that a condition precedent to the closing of the contract is that "no order, injunction, decree or judgment issued by any Governmental Entity or other legal restraint or prohibition preventing the consummation of the transactions contemplated by the Agreement shall be in effect."

40.   The Dutch Enterprise Court has enjoined the consummation of the sale of LaSalle to Bank of America.

41.   Since the PSA expressly provides that the transaction shall not be consummated while an injunction has been issued, Bank of America's actions to enforce the PSA violate the terms of the PSA itself.

42.   Plaintiffs have been damaged by Bank of America's actions in breach of contract. A higher offer has been made for LaSalle by a competing bidder, but that bid has not been accepted and may be withdrawn due to the specter of the massive damages claim made by Bank of America.

43. Plaintiffs and the other shareholders of ABN Amro are entitled to damages from Bank of America for its breach of contract.

WHEREFORE, plaintiffs pray for judgment against defendant:

A. Rescinding the PSA contracting for the sale of LaSalle to Bank of America unless the sale is approved by a vote of ABN Amro shareholders;

B. Enjoining Bank of America from seeking to enforce the PSA or any portion thereof, including the $200 million termination fee;

C. Awarding plaintiffs and the other shareholders of ABN Amro monetary damages against Bank of America in an amount to be determined at trial;

D. Awarding plaintiffs all legal fees, costs, experts fees and consultant fees; and

E. Granting such other and further relief as the Court may deem just and proper under the circumstances.

Dated: May 15, 2007
New York, New York

                                                       WEISS & LURIE

                                                       Joseph H. Weiss (JW-4534)
                                                       David C. Katz (DK-6235)
                                                       551 Fifth Avenue
                                                       New York, New York 10176
                                                       (212) 682-3025

                                                       STULL, STULL & BRODY
                                                       Jules Brody
                                                       6 East 45th Street
                                                       New York, New York 10017
                                                       (212) 687-7230

                                                       Plaintiffs' Counsel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
CARL AND TONI SADOWSKY,

        Plaintiffs,

  vs.                                      RELATED CASE AFFIRMATION

BANK OF AMERICA CORPORATION,

        Defendant.
---------------------------------------------------------------x

STATE OF NEW YORK  )
                              ) ss.:
COUNTY OF NEW YORK  )

    JOSEPH H. WEISS, under penalty of perjury, hereby affirms:

    I am a member of the Bar of this Court and am counsel for plaintiffs Carl and Toni Sadowsky in this litigation. This action is brought on behalf of plaintiffs, who are shareholders of ABN Amro Holding N.V., the defendant in an action brought by Bank of America Corporation in the Southern District of New York under the caption: <u>Bank of America Corporation v. ABN Amro Bank N.V. and ABN Amro Holding N.V.</u>, bearing Civil Action No. 07 cv 3578. In that action, Bank of America alleges breach of contract. Plaintiffs are third party beneficiaries of that contract and bring this action to protect their rights relating to the contract. Thus, both actions arise out of the same facts and circumstances and raise the same issues. The earlier action has been assigned to Judge P. Kevin Castel and it is respectfully submitted that this action should be filed as a related case.

Dated: New York, New York
       May 15, 2007

                                                                   JOSEPH H. WEISS